**PRINCE GEORGE'S COUNTY CIRCUIT COURT**
Courthouse in Upper Marlboro, Maryland

LACHETT LANDRUM
12 Daimler Drive
Capitol Heights, MD 20743

    Plaintiff,

v.                                                             Case No.   CAL22-21940

EXPERIAN INFO. SOLS. INC.
c/o Corporation Trust Incorporated
2405 York Rd #201
Lutherville Timonium, MD 21093

    Defendant,

TRANS UNION, LLC
c/o CSC-Lawyers Incorporating Service Company
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

    Defendant,

PENDRICK CAPITAL PARTNERS II, LLC
c/o Corporation Trust Incorporated
2405 York Rd #201
Lutherville Timonium, MD 21093

    Defendant,

ABILITY RECOVERY SERVICES, LLC
c/o CSC-Lawyers Incorporating Service Company
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

    Defendant.

---

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff, LaChett Landrum, files suit against defendants Experian Information Solutions, Inc. (Experian), Trans Union, LLC (Trans Union), Pendrick Capital Partners II, LLC (Pendrick) and Ability Recovery Services, LLC (Ability), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1692 ("FDCPA"), 15 U.S.C. § 1681 ("FCRA"), Md. Code Ann., Com. Law §§ 14-202 and 13-301, and the common law tort of defamation.

## PARTIES TO THIS ACTION

2. Plaintiff is a natural person who resides in the state of Maryland.

3. Experian and Trans Union are "consumer reporting agencies," ("CRA") as defined in 15 U.S.C. § 1681a(f) for it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and obtains monetary fees for these services.

4. Pendrick and Ability are "debt collectors" as defined in 15 U.S.C. § 1692a(6) for they regularly collect on debts that were purportedly defaulted on to another creditor and they use the mail and/or phone to collect on those debts.

## FACTUAL ALLEGATIONS

5. Ms. Landrum had no negative marks on her credit report until a medical collection account that was reported by Ability appeared on all three of her credit reports.

6. The collection reflected that Ms. Landrum purportedly owed $955 to Ability for a medical debt that arose from services with EMERG MED ASSOC DCH.

7. Ms. Landrum did not owe any money to EMERG MED ASSOC-DCH, so she called Ability to inform it that she did not owe the purported medical debt.

8. During her call to Ability, Ms. Landrum learned that Ability was attempting to collect the medical debt for Pendrick, who claimed to have purchased the purported medical debt from EMERG MED ASSOC DCH.

9. Ability was unable to provide any information that verified Ms. Landrum owed the debt to EMERG MED ASSOC DCH during the phone call.

10. Although Ability lacked information to verify Ms. Landrum owed the debt, Ability refused to stop collecting on the debt, including reporting the debt to the CRAs.

11. However, despite failing to provide any information establishing the purported debt was legitimate, the phone conversation concluded with Ability promising to mail Ms. Landrum a bill for this debt from EMERG MED ASSOC DCH.

12. Ability sent Ms. Landrum a purported "bill" that was generated from Ability or Pendrick, rather than a bill from EMERG MED ASSOC DCH as promised.

13. The so-called "bill" had the wrong information for Ms. Landrum, including the incorrect home address and insurance provider.

14. Ability did not send a bill that was generated from EMERG MED ASSOC DCH because no such bill exists.

15. Upon information and belief, the name EMERG MED ASSOC DCH is being used a reference and/or in place for Doctors Hospital.

16. Ms. Landrum visited and paid Doctors Hospital in February 2019. Because she paid Doctors Hospital and there was no amount owed following her payment, she did not receive a bill from Doctors Hospital.

17. Thereafter, Ms. Landrum sent each CRA a letter disputing the Ability collection.

18. Landrum's dispute letter notified the CRAs that she did owe the debt and provided sufficient detail—as explained above—that enabled the CRA to conduct a reasonable investigation that would reveal the debt was not owed or could not be verified as owed.

19. Dispute letters were sent to Ability and Pendrick contemporaneously with the dispute letters that Ms. Landrum sent to the CRAs.

20. Equifax correctly determined that the Ability collection was erroneous and removed the Ability collection from the Equifax credit report.

21. Experian and Trans Union did not investigate Ms. Landrum's dispute of the Ability collection. Instead, they forwarded notice of the dispute to Ability and relied on Ability's response to the dispute to determine how Ms. Landrum's dispute would be resolved.

22. Ability did not conduct a reasonable investigation of Ms. Landrum's dispute. Instead of investigating Ms. Landrum's actual dispute—that she paid EMERG MED ASSOC DCH and that EMERG MED ASSOC DCH does not claim a bill is owed, Ability simply confirmed that their records showed Ms. Landrum owed the debt to Pendrick.

23. In other words, Ability's response was a superficial investigation that did not seek to verify their records were accurate, but rather, Ability's response simply sought to confirm that the information they furnished to the CRAs was consistent with the information in their records regardless of accuracy of their records.

24. Because Ability was not in possession of information that could verify their reporting was accurate, a reasonable investigation required Ability to contact EMERG MED ASSOC DCH to verify Ms. Landrum did not pay EMERG MED ASSOC DCH.

25. Ability did not contact EMERG MED ASSOC DCH as part of their dispute response.

26. Both Experian and Trans Union knew—from prior experience with Ability—that Ability did not contact EMERG MED ASSOC DCH during their response to Ms. Landrum's dispute.

27. Despite knowing it was Ability's normal course of action to not contact the original creditor to verify information outside of Ability's possession and knowledge, neither Experian nor Trans Union requested and/or instructed Ability to contact EMERG MED ASSOC DCH during their response to Ms. Landrum's dispute.

28. Several third parties received a copy of Ms. Landrum's credit report with the inaccurate and derogatory collection from Ability.

29. Couple of weeks after sending her dispute letters to Pendrick and Ability, Ms. Landrum called Ability. During this phone call, Ms. Landrum asked for the date that Ability purportedly bought the debt from EMERG MED ASSOC DCH. In response, Ability claimed that they did not know when Pendrick purportedly bought the medical debt.

30. Upon information and belief, Ability does not want to reveal the date that Pendrick purportedly purchased the debt from EMERG MED ASSOC DCH because it became illegal for a healthcare provider to sell a medical debt to a debt collector on or after January 2021 and Pendrick's purported acquisition of the debt occurred after January 2021.

31. At some point during the phone call, Ability claimed that the proof of Pendrick's ownership of the EMERG MED ASSOC DCH debt are Ability's reporting of the collection to CRAs and a purported dunning letter that Ability sent to a wrong address for Ms. Landrum.

32. A month later, Ms. Landurm called Pendrick to inquire directly with the purported owner of the debt since she could not obtain any useful information from Ability. The Pendrick employees were very unprofessional as they hung up the phone on Ms. Landrum, withheld basic information and/or provided inconsistent information and was very rude.

33. In fact, Ms. Landrum had to call Pendrick three times to get just *some* of her inquiries answered. During the phone call, Pendrick told Ms. Landrum that the debt was purchased in December 2019 and that Ability did not send her the documents that Pendrick verifies the debt with.

34. However, Pendrick refused to provide further information and instead, instructed her to contact Ability again to request the information. Pendrick claimed the law prevented it from providing the information directly to her and that she needed to request the information from Ability.

35. Upon information and belief, Pendrick did not provide documentation verifying when it purported acquired the debt from EMERG MED ASSOC DCH because it became illegal for a healthcare provider to sell a medical debt to a debt collector on or after January 2021 and Pendrick's purported acquisition of the debt occurred after January 2021.

## COUNT ONE: VIOLATIONS OF FDCPA
### (Ability and Pendrick)

36. Plaintiff incorporates the preceding allegations by reference.

37. Defendants Ability and Pendrick violated FDCPA, 15 U.S.C. §§ 1692e and 1692f by:

    a. attempting to collect a debt from Plaintiff that was not owed;

    b. falsely claiming that Pendrick purchased a debt owed by Plaintiff;

    c. misrepresenting Pendrick's ownership of a debt owed by Plaintiff;

    d. falsely representing to be in possession of documents generated by creditor;

    e. reporting derogatory information to the CRAs that it knew was false;

    f. misrepresenting the legal significance of dunning letter and credit reporting;

    g. unfairly and/or unconscionably reporting false derogatory information to the CRAs as a collection method to coerce Plaintiff into paying the false debt.

    g. withholding information to prevent Plaintiff from discovering the Defendants have no legal right to collect on the debt; and

    h. falsely claiming that Pendrick was legally prohibited from sharing information or documentation directly with Plaintiff that could verify the debt.

38. Defendants' violations ruined Plaintiff's credit and prevented her from obtaining credit and/or dissuaded her from applying for credit, and Plaintiff suffered and continues to suffer from stress that is attendant with coping with the credit damage and attempts to have the erroneous information removed or corrected.

6

39. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

## COUNT TWO: VIOLATION(S) OF MCDCA
### (Ability and Pendrick)

40. Plaintiff incorporates the preceding allegations by reference.

41. Defendants Ability and Pendrick violated Md. Code Ann., Com Law § 14-202(11) by violating the FDCPA as described in paragraph 35.

42. Defendants Ability and Pendrick violated Md. Code Ann., Com Law § 14-202(8) by claiming a right to collect and attempting to collect on a debt that they know, or should know, that they have no right to collect on.

43. As a result of Defendants' foregoing conduct, Plaintiff suffered actual damages consisting of both pecuniary expenses, loss of credit, humiliation and other emotional distress.

44. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages pursuant to Com Law § 14-203.

## COUNT THREE: VIOLATION(S) OF MCPA
### (Ability and Pendrick)

45. Plaintiff incorporates the preceding allegations by reference.

46. Defendants Ability and Pendrick violated the MCPA, Md. Code Ann., Com Law § 13-301(14)(iii) when the Defendants violated the MCDCA.

47. As a result of Defendants' foregoing conduct, Plaintiff suffered actual damages consisting of both pecuniary expenses, loss of credit, humiliation and other emotional distress.

48. Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages and attorney's fee pursuant to Com Law §§ 13-408(a)-(b).

## COUNT FOUR: VIOLATIONS OF FCRA
### (Ability, Experian and Trans Union)

49. Plaintiff incorporates the preceding allegations by reference.

50. Defendant Ability violated FCRA, 15 U.S.C. §§ 1692s-2(b)(1)-(5) by:

    a. failing to conduct a proper and reasonable investigation of Plaintiff's dispute(s);

    b. ignoring Plaintiff's dispute letter which was forwarded by CRAs to Ability;

    c. falsely reporting to the CRAs that the disputed information was verified; and

    d. failing to delete inaccurate, incomplete or unverifiable information that was disputed by Plaintiff.

51. Defendants Experian and Trans Union violated FCRA, 15 U.S.C. § 1681e(b) by:

    a. failing to use reasonable procedures to report maximum accurate information;

    b. blindly relying on an unreliable source of information in their preparation and furnishing of credit reports that contained the collection reported by Ability;

    c. ignoring information from sources other than the furnisher, such as information from the consumer or other CRAs, during their preparation and furnishing of credit reports containing the Ability collection; and/or

    d. treating information received from medical debt collectors, which are notoriously the most unreliable furnishers, in the same manner that they treat information received from their most reliable furnishers.

52. Defendants Experian and Trans Union violated FCRA, 15 U.S.C. § 1681i(a) by:

    a. failing to conduct a reasonable investigation of Plaintiff's dispute;

    b. failing to consider all the relevant information in Plaintiff's dispute; and

    c. failing to delete inaccurate or incomplete or unverified information.

8

53. Defendant Trans Union violated FCRA, 15 U.S.C. § 1681i(a) by failing to provide Plaintiff with investigation results for her dispute.

54. Defendants' violations ruined Plaintiff's credit and prevented her from obtaining credit and/or dissuaded her from applying for credit, and Plaintiff suffered and suffers from stress due to the distress that is attendant with coping with the credit damage and endeavoring to have the erroneous information removed or corrected.

55. Defendants' violations were the result of an intentional policy to short-circuit their responsibilities of the FCRA for the sake of saving money on investigating credit disputes

56. Plaintiff seeks an award of actual damages in amount over $100,000 and an award of $3,000 in statutory damages for Defendants' violations under the FCRA, and an additional punitive damages award of up to ten times her actual damages award or up to 100 times her statutory damages.

## COUNT FIVE: DEFAMATION
(Ability, Experian and Trans Union)

57. Plaintiff incorporates the preceding allegations by reference.

58. Defendants Ability, Experian and Trans Union knew they were reporting false information because Plaintiff notified the Defendants that they were reporting false information.

59. Defendants' reporting constituted defamatory statements as the reportings were injurious to Plaintiff's financial profile, credit profile and employment profile.

60. Defendants knew that their false reporting would cause Plaintiff to be denied credit.

61. Defendants' false and defamatory reporting caused Plaintiff to suffer damages, including but not limited to: pecuniary costs, damage to her financial reputation, loss of credit opportunity and emotional and mental distress.

62. Plaintiff is entitled to actual and punitive damages for Defendants' defamation.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment separately against each Defendant for actual, statutory damages and punitive damages in amounts to be decided by the jury, and for attorney fees and costs in an amount to be decided by the Court.

Respectfully submitted,

LACHETT LANDRUM

_____
Quinn B. Lobato, Esq.
210 Grisdale Hill
Riva, MD 21140
Tel: (240) 305-4770
quinn.lobato@gmail.com

*Attorney for Plaintiff*